IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Ma Gloria B., | ) |
|     Plaintiff, | ) |
| v. | ) Case No.: 24-cv-50367 |
| | ) Magistrate Judge Margaret J. Schneider |
| Frank J. Bisignano, | ) |
| Commissioner of Social Security, | ) |
|     Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

    Plaintiff, Ma Gloria B., seeks review of the final decision of the Commissioner of the Social Security Administration denying her disability benefits. For the reasons set forth below, Plaintiff's motion to reverse and remand the Commissioner's decision [14] is denied and the Commissioner's motion for summary judgment [19], is granted.

**BACKGROUND**

    A.    Procedural History

    On July 8, 2021, Ma Gloria B. ("Plaintiff") protectively filed an application for disability and disability insurance benefits. R. 28. This application alleged a disability beginning on February 8, 2021. *Id.* The Social Security Administration ("Commissioner") denied her application on March 14, 2022, and upon reconsideration on August 22, 2022. *Id.* Plaintiff filed a written request for a hearing on September 15, 2022. *Id.* On May 18, 2023, a hearing was held by Administrative Law Judge ("ALJ") George M. Gaffaney where Ma Gloria appeared and testified, with the assistance of a Spanish interpreter. Plaintiff was represented by counsel.[1] *Id.* At the hearing, an impartial vocational expert ("VE"), Tobey Andre, also appeared and testified. *Id.*

    On July 20, 2023, the ALJ issued his written opinion denying Plaintiff's claims for disability insurance benefits. R. 28-39. Plaintiff appealed the decision to the Appeals Council, and the Appeals Council denied Plaintiff's request for review. R. 1-8. Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *See* 42 U.S.C. § 405(g); *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007). The parties have consented to the jurisdiction of this Court. *See* 28 U.S.C. § 636(c); [6]. Now before the Court are Plaintiff's motion to reverse and remand the Commissioner's decision [14] and the Commissioner's motion for summary judgment and response to Plaintiff's motion [19]. Plaintiff also filed a reply brief [26].

---

[1] The same counsel that represented Plaintiff at the hearing represents Plaintiff before this Court.

B. The ALJ's Decision

In his ruling, the ALJ followed the statutorily required five-step analysis to determine whether Plaintiff was disabled under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). At step one of the five-step analysis, the ALJ found that Plaintiff had not been engaging in substantial gainful activity since the amended alleged onset date of February 8, 2021. R. 30. At step two, the ALJ found that Plaintiff had the following severe impairments: rheumatoid arthritis, systemic lupus erythematosus, chronic obstructive pulmonary disease ("COPD"), and status post lymph node cancer with chemotherapy and radiation. *Id*. The ALJ found that these impairments significantly limited Plaintiff's ability to perform basic work activities. *Id*. At step three, the ALJ found that Plaintiff did not have an impairment or combination or impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. R. 31.

Before step four, the ALJ found that Plaintiff had a residual functional capacity ("RFC") to perform light work except that she can lift and carry 20 pounds occasionally and 10 pounds frequently. She can sit 6 hours and stand and/or walk 6 hours in an 8-hour workday. She can occasionally climb, stoop, balance, kneel, crouch, and crawl. Plaintiff can perform occasional overhead reaching with the left upper extremity. She can have occasional exposure to extremes of heat, cold, and humidity. She can also have occasional exposure to dust, fumes, odors, and other pulmonary irritants. R. 31-35. At step four, the ALJ found that Plaintiff was capable of performing past relevant work as a general production worker, noting that this work does not require the performance of work-related activities precluded by Plaintiff's RFC. R. 35-38. In addition to finding that Plaintiff could perform past relevant work, the ALJ made alternative findings for step five, determining that Plaintiff would be able to perform the requirements of other representative occupations. R. 36-37. However, because the ALJ found that Plaintiff had the RFC to perform past relevant work, the ALJ concluded that Plaintiff was not disabled under the Social Security Act at any time from February 8, 2021, through the date of decision, July 20, 2023. R. 38-39.

## STANDARD OF REVIEW

The reviewing court evaluates the ALJ's determination to establish whether it is supported by "substantial evidence," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cain v. Bisignano*, No. 24-1590, 2025 WL 2202133, at *3 (7th Cir. Aug. 4, 2025) (quoting *Crowell v. Kijakazi*, 72 F.4th 810, 813 (7th Cir. 2023)). " Substantial evidence is 'more than a mere scintilla.'" *Biestek v. Berryhill*, 587 U.S. 97, 97, 103 (2019) (citations omitted). "Whatever the meaning of 'substantial' in other contexts," the Supreme Court has emphasized, "the threshold for such evidentiary sufficiency is not high." *Crowell*, 72 F.4th at 813 (quoting *Biestek*, 587 U.S. at 103) (citation modified). As such, the reviewing court takes a limited role and cannot displace the decision by reconsidering facts or evidence or by making independent credibility determinations, *id*. at 814 (citing *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)), and "confines its review to the reasons offered by the ALJ." *Green v. Astrue*, No. 11 CV 8907, 2013 WL 709642, at *7 (N.D. Ill. Feb. 27, 2013). As the Seventh Circuit has made clear, ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell*

*v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024) (citations omitted). "All we require is that ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial review." *Id*. at 1054 (citation modified).

The court will only reverse the decision of the ALJ "if the record compels a contrary result." *Thorlton v. King*, 127 F.4th 1078, 1081 (7th Cir. 2025) (citation modified) (citation omitted). The court is obligated to "review the entire record, but [the court does] not replace the ALJ's judgment with [its] own by reconsidering facts, re-weighing or resolving conflicts in the evidence, or deciding questions of credibility." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020). The court's "review is limited also to the ALJ's rationales; [the court does] not uphold an ALJ's decision by giving it different ground to stand upon." *Id*. Additionally, an ALJ "need not specifically address every piece of evidence, but must provide a logical bridge between the evidence and his conclusions." *Bakke v. Kijakazi*, 62 F.4th 1061, 1066 (7th Cir. 2023) (citation modified) (citations omitted); *see also Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015).

## DISCUSSION

Plaintiff argues the ALJ erred by interrupting counsel's questioning during the hearing regarding Plaintiff's past relevant work and interrupting and preventing cross-examination regarding the VE's methodology for reaching her conclusions. Plaintiff further argues these errors led to the ALJ improperly denying Plaintiff at step 4. Plaintiff also argues that the ALJ impermissibly "played doctor" by finding medical testing and imaging inconsistent with a finding of disability. The Court finds that the ALJ did not err in the course of the hearing and, therefore, his findings at step 4 were supported by substantial evidence. The Court further concludes that the ALJ did not impermissibly "play doctor."

**Due Process – Past Relevant Work**

Plaintiff first claims the ALJ's interruptions at the hearing denied her a full and fair hearing in violation of her due process rights. During Plaintiff's counsel's examination of Plaintiff at the hearing, the following colloquy took place (note: an interpreter was present during the hearing):

> ATTY.: Okay, and then your work history, you did some assembly work. Was that small parts, or big parts?
>
> INT: Interpreter needs interpretation, Counsel. Can you please repeat?
>
> ATTY: Sure. For her work history, she did some assembly work. Was that small parts or big parts?
>
> PLAINTIFF: Small objects.
>
> ATTY: Okay.
>
> ALJ: We can wait on the job.

3

>ATTY: Sure.
>
>ALJ: Until we get there with the vocational expert.
>
>ATTY: Okay. Yeah, I just wanted to clarify a bit on that because there's so many different assembly positions, but that's fine.
>
>ALJ: Yes, we can wait on that.
>
>ATTY: Not a problem, okay. Okay then, with that Judge, that will wrap up all my questions.

R. 48-49. The ALJ then began his examination of the VE, asking what the VE found to be Plaintiff's past relevant work. The VE testified Plaintiff's past relevant work was general production work, DOT Code 529.686-070 with SVP 2, the unskilled level. R. 49. The VE further testified this work is generally performed in the national economy at the medium level, "and as performed by [Plaintiff] based on Exhibits 4E and 13E, performed at the light level." R. 50. (Exhibits 4E and 13E in the record are Plaintiff's work history/background reports.) Following this brief testimony by the VE regarding Plaintiff's past relevant work, the ALJ asked counsel: "Anything else, Ms. Miller, in past work?" to which Plaintiff's counsel responded: "No, I think that's fine." R. 49-50. Later, counsel did question the VE on Plaintiff's past relevant work as performed. Specifically, she questioned the VE's opinion that Plaintiff could perform past relevant work despite the fact that the job description of Plaintiff's assembly work listed 8 hours a day of reaching. R. 56. The VE's testimony on this point stood after the ALJ directly asked Plaintiff if she did any overhead reaching at her work, to which Plaintiff replied "no." R. 58. Following this, counsel for Plaintiff asked the VE to provide her sources for her previous testimony that "reaching overhead is not required to be done more than occasionally." R. 52. To this, the ALJ interjected and asked Plaintiff's counsel why she would want or need this information. R. 57-58. While the ALJ advised counsel that he believed that the information provided by the VE was sufficient, he granted counsel two weeks to file a post-hearing memorandum challenging the VE's testimony. *Id*. Plaintiff did submit a post-hearing memorandum; however, as noted in the ALJ's decision, this brief did not address any concerns about the VE's testimony as to past relevant work and instead focused on step 5 and the other representative occupations.

"Although a claimant has the burden to prove disability, the ALJ has a duty to develop a full and fair record. Failure to fulfill this obligation is 'good cause' to remand for gathering of additional evidence." *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000) (internal citations omitted). "However, the ALJ obviously may exercise reasonable discretion in receiving evidence and conducting an efficient hearing, particularly in light of daunting caseloads. Moreover, remand based on a violation of due process rights is only appropriate with a showing of prejudice." *Carey v. Berryhill*, No. 17-cv-581-wmc, 2018 WL 11683511, at *4 (W.D. Wisc. Aug. 31, 2018) (citations and quotations omitted). After a careful review of the testimony transcript, the Court finds that the ALJ developed a full and fair record. The Court agrees that the ALJ cut short Plaintiff's counsel's questioning of her client regarding her past relevant work; however, he clearly stated that counsel could revisit this line of questioning with the VE. When specifically given the opportunity to

question the VE regarding past relevant work, Plaintiff's counsel responded, "No, I think that's fine." R. 49-50. Counsel did question the VE later in the hearing regarding reaching. However, after that portion of the testimony was completed, counsel did not further question the VE regarding Plaintiff's past relevant work. Finally, the ALJ gave counsel the opportunity to submit a post-hearing memorandum "to challenge the VE testimony." R. 58. The issues now raised in Plaintiff's brief before this Court regarding the VE testimony at the hearing – the source of Plaintiff's past relevant work (Exhibits 4E and 13E), Plaintiff's limited testimony that she worked with "small parts," and which of Plaintiff's multiple assembly and packing jobs the VE relied on to find past relevant work – were neither addressed at the hearing itself nor through Plaintiff's post-hearing memorandum. The Court finds that Plaintiff was provided due process and any challenge regarding a finding that she could perform past relevant work is waived. *Coyier v. Saul*, 860 Fed. Appx. 426, 427-28 (7th Cir. 2021) ("Coyier waived any challenge to the VE's testimony by failing to ask any questions to reveal shortcomings in [the VE's testimony] or to submit a supplemental brief on the issue despite assuring the court prior to and at the hearing that he would do so. These omissions effectively conceded the reliability of the VE's [testimony].").

**Due Process – VE Methodology**

Next, Plaintiff argues that the ALJ interrupted questioning and prevented cross-examination regarding the VE's methodology for reaching her conclusions. In response to questioning from Plaintiff's counsel, the VE testified at the hearing that she used the Occupational Employment Quarterly and SkillTRAN as "reference point[s] when reviewing information for specific [Dictionary of Occupational Titles] codes, such as physical demands, skills, and competency and education."[2] R. 55. The VE testified that these publications are generally relied upon in the profession. R. 56. The VE also testified that reaching overhead in the context of past relevant work of general production worker is not required to be done more than occasionally. R. 51-52. She based this opinion on her "training, knowledge, education, and experience in the field, articles which [she has] read, and conferences and seminars which [she has] attended." R. 52. When counsel for Plaintiff asked the VE to provide her sources (specifically the "articles" the VE referenced), the ALJ asked counsel why counsel wanted the VE to provide these sources. The ALJ noted that he found the VE's testimony "sufficient," but allowed counsel two weeks to submit a post-hearing memorandum challenging the VE's testimony.

In her post-hearing memorandum, Plaintiff criticized the VE for basing her "suspiciously round job number estimates on her professional experience and by utilizing Job Browser Pro,"[3] argued the VE could not produce any "underlying information" on how she developed her professional experience and stated that her testimony was generally flawed and not based on substantial evidence. R. 377-78. Following the submission of the memorandum, counsel for Plaintiff did not request a supplemental hearing. In his decision, the ALJ acknowledged the issues presented by Plaintiff in her post-hearing memorandum. Specifically, as to Plaintiff's objection regarding the VE's methodology and job numbers as unreliable, the ALJ overruled the objection

---

[2] The hearing transcript specifically says, "application Employment Quarterly, which is a publication of the United States Publishing Company." Given the context, the Court finds that "application" is a transcription error and the VE testified to the "Occupational Employment Quarterly."

[3] Job Browser Pro is a specific product within the SkillTran program. *See* https://skilltran.com/index.php/products/pc-based-solutions/job-browser-pro. Last visited September 24, 2025.

noting that the VE had professional knowledge and experience in job placement, Plaintiff did not object to the VE's qualifications at the hearing, and the VE used information from the Dictionary of Occupational Titles, an administratively noticed source of job data. R. 37-38. As to the job numbers, the ALJ found that Plaintiff offered no evidence to rebut the VE's numbers, just counsel's own analysis. R. 38. The ALJ added that even counsel's analysis failed to show less than a significant number of jobs for other work. The ALJ went on to state that "the claimant's representative has not provided any evidence indicating any job provided by the vocational expert is isolated and exists in only very limited numbers in relatively few locations which would indicate a significant number of jobs were not available." R. 38. After his analysis, the ALJ overruled Plaintiff's objections.

As the Seventh Circuit has noted, "[a] vocational expert's testimony is not precluded simply because the expert did not describe the underlying formula of the resource relied upon. Instead, the court looks at the expert's testimony as a whole and the specific facts of [the] case." *Chavez v. O'Malley*, 96 F.4th 1016, 1024 (7th Cir. 2024). The *Chavez* court found that the VE's testimony had "sufficient indicia of reliability to clear the low substantial evidence threshold." *Id*. Here, while the ALJ did prevent counsel from questioning the VE on the sources of information she used in concluding that overhead reaching was not a function in the different positions she testified to, the ALJ did allow counsel to challenge the VE's testimony and gave her two weeks to submit a post-hearing memorandum accordingly. To that invitation, counsel responded: "Okay, that sounds good." R. 57-58. The ALJ also left open the possibility of a supplemental hearing. R. 58. As noted above, no supplemental hearing was requested by Plaintiff. Moreover, the ALJ's decision sufficiently set out Plaintiff's supplemental arguments and competently analyzed them, finding that the VE effectively "cleared the low substantial evidence threshold." Finally, the ALJ made clear that Plaintiff was found able to perform past relevant work – making the arguments regarding the VE's testimony of other jobs substantially moot. The Court finds that any interruption or prevention of cross-examination during the VE's testimony regarding her methodology did not rise to the level of interfering with Plaintiff's right to due process.

**Denial at Step 4**

Relatedly, Plaintiff next argues that the ALJ's denial of Plaintiff at step 4 was not based on substantial evidence. She bases this argument on the assertion that she was prevented from adequately questioning the VE on her past relevant work and that the VE's reliance on Plaintiff's work history forms was not proper because Plaintiff did not fill out the forms. The Court finds these arguments unavailing. As to the argument that Plaintiff was prevented from questioning the VE on her past relevant work, when questioned by the ALJ, the VE testified that she found "general production worker" to qualify as Plaintiff's past relevant work, performed by Plaintiff "based on Exhibits 4E and 13E, performed at the light level." R. 49-50. The ALJ then questioned Plaintiff's counsel, "[a]nything else, Ms. Miller, in past work?" To which counsel replied, "[no], I think that's fine." R. 50. The record reflects that Plaintiff did not engage in any examination of the VE on her past relevant work determination. To the extent that Plaintiff is arguing she was prevented from questioning the VE further into the hearing, the Court has addressed that above. Otherwise, Plaintiff has failed to develop that portion of her argument. Plaintiff also suggests that she herself did not fill out Exhibits 4E and 13E – past relevant work history reports, relied on by the VE when making her determination. Plaintiff's argument here is that she did not then have the opportunity

6

to testify to "the actual function of her past work." [14], p. 8. Plaintiff was represented by counsel at the hearing before the ALJ. At the beginning of the hearing, the ALJ asked, "[a]ny objections to the exhibits, Ms. Miller?" To which, counsel responded, "[no]." Counsel was then asked if she had any additional records coming. Plaintiff's counsel advised the ALJ: "No, the record can be closed." R. 43-44. "[A] claimant represented by counsel is presumed to have made his best case before the ALJ." *Bouvat v. O'Malley*, Case No. 23-CV-32, 2024 WL 1304007, at *3 (E.D. Wisc. March 27, 2024) citing *Skinner v. Astrue*, 478 F.3d 836, 842 (7th Cir. 2007). Here, Plaintiff's counsel did not bring to the ALJ's attention the concern that Plaintiff did not fill out Exhibits 4E and 13E. Neither was this concern addressed in Plaintiff's post-hearing memorandum. Only now, before this Court, does Plaintiff bring this matter to light. However, the argument is misplaced and undeveloped. Additionally, an argument that the VE's reliance on Plaintiff's work history forms was not proper because Plaintiff did not fill out the forms is speculative and without any support for an argument that error occurred. The Court finds no error in the ALJ's step 4 determination.

### "Playing Doctor"

Finally, Plaintiff argues that the ALJ impermissibly "played doctor" by failing to call a medical expert to testify as to Plaintiff's physical or mental condition. Specifically, Plaintiff objects to the following ALJ's conclusions in the RFC analysis:

> The claimant's years of medical records from her treating physician do not provide a basis for finding that she is significantly limited in her ability to sit, stand, walk, lift, or carry. The claimant's physical examinations have been largely unremarkable with only infrequent notations of swelling and tenderness in her joints…The medical record simply does not evidence the abnormal findings one might expect to see in corroborating the level of limitation the claimant alleges…Further, the claimant's treating sources have not referred her [to] physical therapy or pain management. While the claimant has participated in physical therapy, it focused on her jaw, neck, and ear pain.

R. 33. Plaintiff argues this is evidence of the ALJ "playing doctor" and substituting his opinion for that of Plaintiff's treating physicians. Plaintiff further argues that she had "both objective and subjective findings which support[ed] her testimony regarding her limitations" and "[h]er treating physicians provided medical source statements further outlining her conditions." [14], p. 11.

In his RFC analysis, the ALJ found that Plaintiff could perform light work with certain limitations. R. 31. In making this determination, the ALJ first reviewed Plaintiff's testimony and noted that Plaintiff asserted that her disability is due to shoulder pain which significantly limited her ability to sit, stand, walk, lift and carry. Additionally, she testified that she had swelling in her fingers in the morning, struggled with manipulating objects, suffered from fatigue, and could only climb 5 of the 12 steps in her home. R. 32. Next, the ALJ underwent an extensive review of Plaintiff's medical records. This review included Plaintiff's ongoing treatment for rheumatoid arthritis and lupus, noting that during her years of treatment for these conditions, Plaintiff's examinations have been remarkable for tenderness in her joints, but generally no joint swelling. [32]. Other records showed tenderness and swelling but these conditions were abated with treatment. The ALJ noted that her records showed her symptoms were stable and her

rheumatologist described her condition as stable. Additionally, her examinations revealed normal range of motion and other normal findings. Plaintiff's treater opined that she had moderately controlled rheumatoid arthritis, and her lupus symptoms had decreased with treatment. *Id*. The records cited by the ALJ revealed that by February 2023, Plaintiff had unremarkable examinations but required minor adjustments to her medication. Based on this, the ALJ concluded that Plaintiff's assertions of significant limitations were unsupported. *Id*. Next, the ALJ noted that Plaintiff's treatment records for COPD showed largely unremarkable examinations and effective medication management. *Id*. The ALJ cited to medical records showing years of treatment where Plaintiff repeatedly denied having a cough or shortness of breath. Her examinations revealed the same. *Id*. Records from March 2023 revealed complaints of shortness of breath with exertion, but Plaintiff admitted she had not been using her inhalers. R. 32-33. The ALJ further noted that the "exertional, postural, and environmental limitations assessed herein account for the claimant's brief periods of respiratory symptoms." R. 33. The ALJ also considered Plaintiff's status post lymph node cancer with radiation and chemotherapy. *Id*. Following initial treatment, Plaintiff received medication for maintenance therapy. Again, the ALJ noted that limitations were assessed to account for this medical concern.

      The ALJ then reviewed the medical opinions and prior administrative medical findings. As to the state agency consultants – Frank Mikell, M.D., and Calixto Aquino, M.D. – the ALJ found their offered opinions to be partially persuasive. These consultants found Plaintiff capable of performing light work with certain postural, manipulative, and environmental limitations mostly consistent with the ALJ's crafted RFC. R. 34. In January 2022, Connie Chappel, M.D. conducted a consultative examination on Plaintiff that the ALJ addressed in his findings; however, her report was accorded no persuasive value as Dr. Chappel did not offer an opinion. Next, the ALJ acknowledged that in December 2022, Cassandra Lopez, M.D., a treating physician, noted, among other things, that Plaintiff was limited in her ability to perform manipulative and postural activities, and had severe limitations in her activities of daily living, making it very difficult for her to work. The ALJ found Dr. Lopez's offered opinions "wholly unpersuasive." R. 34. The ALJ decision detailed that while Dr. Lopez is a treating source, her notes indicated that her offered opinions were based on Plaintiff's reports – "Dr. Lopez's notations clearly indicate that she did not offer a medical opinion. Rather, Dr. Lopez simply provides a recitation of the claimant's statements of her abilities and limitations." *Id*. The ALJ considered Dr. Lopez's opinion of "no value" in determining Plaintiff's RFC. R. 35.

      Plaintiff argues that the ALJ's finding that "the medical record simply does not evidence the abnormal findings one might expect to see in corroborating the level of limitation the claimant alleges" is tantamount to the ALJ substituting his own lay opinion for that of Plaintiff's treating physicians. The Court disagrees. The ALJ made a determination, based on his review of the medical record as well as Plaintiff's testimony at the hearing, that the medical record belied Plaintiff's allegations and testimony. This does not rise to the level of the ALJ "playing doctor" or error in not calling a medical expert to address insufficient evidence. The ALJ's reliance on two medical expert opinions that Plaintiff was capable of performing a range of light work was sufficient and supported. The court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (citations and quotations omitted). In his decision, the ALJ analyzed each medical expert opinion and explained

8

the weight he afforded to each opinion. The ALJ is tasked with assessing medical evidence to determine a claimant's RFC, *see* 20 CFR §§ 416.945, 416.920c, and an ALJ does not "play doctor" by performing this function. *Heather M. v. Berryhill*, 384 F.Supp.3d 928, 935 (N.D. Ill. 2019) ("Assessing medical evidence was not 'playing doctor' – a stock error of which plaintiff accuses the ALJ.") (citation modified). The Court finds that the ALJ "provide[d] a logical bridge between the evidence and his conclusions," *Bakke*, 62 F.4th at 1066 and that substantial evidence supported the decision.

To the extent that Plaintiff argues that the ALJ "played doctor" by interpreting medical findings on his own as opposed to relying on the provided medical opinions, this argument fails as well. Plaintiff's brief does not cite any portion of the ALJ decision where the ALJ interpreted Plaintiff's medical records. The ALJ deferred to the opinions of Dr. Mikell and Dr. Aquino who agreed that Plaintiff was able to perform work at a light level. The ALJ further acknowledged medical findings that favored a consideration of disability but found that the evidence favoring an RFC of light work was more supported by the medical record. As noted above, this Court will not "substitute its judgment for the ALJ's with respect to how to assess the medical opinions or how to balance conflicting medical opinions." *Joseph K. v. O'Malley*, No. 21 C 6782, 2024 WL 3888810, at *4 (N.D. Ill. Aug. 20, 2024). Again, the Court finds the ALJ did not impermissibly "play doctor" and his decision in grounded in sufficient support. *See Thorlton v. King*, 127 F.4th 1078, 1080 (7th Cir. 2025) (The court's review "proceeds with a light touch – not holding ALJs to an overly demanding evidentiary standard and in turn reinforcing that claimants bear the affirmative burden of proving their disability.").

## CONCLUSION

For the reasons stated above, Plaintiff's motion to reverse and remand the Commissioner's decision [14] is denied and the Commissioner's motion for summary judgment [19], is granted.

Date: September 24, 2025                    ENTER:

*Margaret J. Schneider*
United States Magistrate Judge